We'll take a moment to clear the courtroom before hearing the next case, which is Adams v. Newport Crest Homeowners Association. Okay. Just a moment. All right, counsel for appellant may proceed. Thank you, your honor. I'm sorry. I'm a little nervous this morning. I apologize profusely. Okay. Um, first may it please the court. My name is Christine Adams. I am the appellant and the cross appellee because Newport Crest, the, the appellee in the original appeal, um, decided to cross claim on two issues. Um, so I would like to reserve some time. Um, but I'm not quite sure how we do this because we've got my appeal and then their appeal. And so are we still splitting it? I have 15 total and they have 15 total. And then I would suggest that we handle if, if there's no objection, I would suggest that you, we handle them together and that you reserve as much time as you want, argue both and we'll hear from your adversary on both. And, uh, if you wish to reserve two minutes for rebuttal, that time is the entire time you have. So when it says two minutes, you're done. Yeah. And I get that. And so my thought is with that answer that I should probably reserve seven minutes because I don't know how, um, how much is going to be raised. And you can do that. Just let's, let's see how it goes and keep track of your own time. Okay. And I have a clock here. So that's not, it shouldn't be too difficult. Okay. And I'm already running. Okay. Um, so again, good morning, your honors. I am the appellant in this matter. Um, this is a very long history, the case, and that led to the bankruptcy court deciding that the facts were convoluted. That is the very beginning of its ruling, which raises a big question. Well, if they were convoluted, why did you issue a summary judgment on it? When you didn't even know that the facts were all that clear. And then the bankruptcy appellate panel, when it went up to them, they didn't look at the facts. And that's all, as you guys know, or I don't mean to say you guys, as your honors know, I am so sorry. Um, as your honors know, I addressed that in my opening brief. I'm so concerned because the facts were so muddled. Can I, can I just in an attempt to kind of call out some of these facts, as I understand it, there were two prior to the filing of bankruptcy, there were two state claims pending in state court. Is that correct? It's correct. Okay. And you had filed both of those. Is that right? You had lost on the first one? No, your honor. It was settled. The first one is settled and that's why it's referred to as a settlement action. And it was dismissed by the time we were in bankruptcy. And the settlement action. And so where did the attorney's fees award? Well, the settlement action, once it was dismissed. I had to appeal it because Newport Crest decided they were going and remember it was, you appealed the first one or the second one because it was dismissed because we had settled, but Newport Crest turned around and said, well, since it was dismissed because you settled inside that state state court opinion is the implicit idea that we're, we can't even be held accountable for our breaches of the settlement agreement, thus became the second case, which is called the enforcement action. There was no reason. But there were attorneys fees awarded on the first action or not? On the appeal of the first action because of the issue that I just articulated, because they tried to argue that I couldn't address their breaches, but the settlement action in it's in and of itself was settled and it was dismissed. We went on appeal. Those are what the attorney's fees were ultimately accrued incurred from the, um, the, the appeal was filed before then. The brief, the opening brief was filed. The opposition brief was filed. The reply brief was due in December. I mean, in January, in February of 2009, and had I filed it on time, it also would have been prior to the filing of the bankruptcy petition in March, 2009. But in the end, that case remained dismissed and it was never activated again because it was dismissed. So can I ask, so you filed in 2009, you filed bankruptcy, right? And did the homeowner's association until, uh, until they went in to seek a reopening because of the attorney's fees award, did they ever enter, try to enter into the bankruptcy proceeding to say, Hey, we may have a claim here. Oh, they did not, Your Honor. And they didn't. And after they were served with the amended schedules and all, and all of my, all of the attachments, it's very much, I have many attachments in the excerpts of record about all of it because the story was about how I had been driven into my life had been obliterated by their actions and that's why I ended up in bankruptcy, not because of your conventional ideas of why we end up in bankruptcy. And so all of that story was in all of the attachments to all of the bankruptcy schedules. Not once did they challenge it at all. After we got the discharge order, and there was no exception to my listing those appellate fees, okay, from Matt Appeal, they didn't file anything. They didn't oppose it. They let all of the deadlines run. Two weeks later, after the order, the closing order was issued in the bankruptcy, they filed a motion for fees and went after me in state court. And I apologize. My opening brief, I don't think my private brief was as bad, but the opening brief was full of me trying to explain how I had no idea what I was doing. I was all by myself. I was rendered completely moneyless. I had not a dime. I was trying to handle it on my own. And when they decided they didn't have to mention the discharge when they filed their motion for attorney's fees, I thought it wasn't supposed to be. So then they turned around seven years later and filed the adversary proceeding and blamed me. They're justifying all of their behavior by blaming me. So, okay, and I know you want to reserve some time, but as to the claim preclusion argument, which I guess the BAP did not make a finding on, but the bankruptcy judge did and found that that should have been raised or could have been raised in the state court proceeding. That is, I'm sorry. No, I would like to, it sounds like it was not raised in the state court proceeding. And it absolutely was not raised. And that was, yeah, and the bankruptcy court went by the two cases that were cited by Newport Crest on that particular issue. And my opposition pointed to Corolla saying, I can't waive that. It's, you know, and there are cases that say it's not, when they go after me and it's in violation of a discharge order, it's not my responsibility because what they did is they turned around and then their briefing in the bankruptcy court was replete with them saying, I lulled them into believing that I was never going to argue that it was discharged somewhere down the line. But, but the bottom line is, is it's seven years later. And when they filed that motion for attorney's fees, they did it unilaterally two weeks after the bankruptcy was closed without filing any paperwork in the bankruptcy court, disputing the discharge of anything. And then it blamed me for everything I did after that. And I didn't know because they were the high powered law firms, law firm, and I figured they knew the law more than I did. And I mean, and I stand here admitting that I was incredibly ignorant, but I'm sorry, I need to return to what you were saying. No, you're fine. And if you want to reserve your time, I think you'd be well within your rights. I, I cited to Corolla because it's a classic case, at least according to all the research I did, that that really defeated the basis for the collateral estoppel in the argument that I should have, would have, could have raised the discharge in the motion for attorney's fees. All right. I think the best thing for us to do now is to hear from your adversary and then you have plenty of time to respond. Okay. Thank you very much. Thank you. Morning, your honors. Chris Miner, Ringstead and Sanders appearing on behalf of the appellee and cross appellant. Um, the one thing that Ms. Adams and I certainly agree on is that this matter has a long and tortured history. Uh, I think we're at about 13 years. So can I, can I just ask, I'll ask you the question that I asked Ms. Adams, why didn't the homeowners association, uh, come into the bankruptcy and try and, uh, assert a future claim? Well, I think at that point, the matter was being handled by another law firm, which did not handle bankruptcy. Um, and I think that perhaps they did not recognize that, uh, a future unliquidated contingent claim can still be filed in a bankruptcy case. Um, however, that fact is not necessarily, uh, fatal to whether or not, and not only could be, but should be right. I'm sorry. Not only could be, but should be. Not only could be, but should be. Not only can the contingent claim, not only could it be filed, but it should be filed. Yes. Yeah. Yeah. So if, and it wasn't filed, so I, I'm, I, I, with regard to the first litigation, which was still ongoing at the time of the bankruptcy, is that right? Yes. All right. The, what the back found in the bankruptcy court was that her continuing that litigation by filing a reply brief, then losing, then having a fee award was a quote, return to the fray. How can that be? It's still the same case. Well, correct. Let, let me just go back to the question you asked me before about the claim filing. Although it is theoretically possible for a claim to be filed in a bankruptcy case by the homeowner's association in a case like this, where there are no assets, the trustee doesn't even send out a notice to creditors to file claims because unless there are going to be assets administered, filing claims is a meaningless act. So another reason they may not have filed a proof of claim as it was a no asset case and there were no need for any creditors to file claims. As for the second issue, your honor asked about. I'm not sure it's a second issue. It's the same issue. I mean, this is a case that would otherwise be discharged by the bankruptcy. If, if, if she hadn't continued it, right? Correct. Whether the claim. All right. And then, but she can, but the case was still there. And unless there is some reason why she was required to, to roll over at that point, it was certainly foreseeable that the case was going to continue. And it was the same case. Well, no, there is a reason why she should roll over at that point, because any liability on the part of Ms. Adams for attorney's fees could have been discharged. Right. Could have been discharged. Had an election where she could stop the litigation and accept the discharge and go on her way. Or she could return to the fray and continue the litigation, in which case any attorney's fees awarded against her would not be discharged. And the underlying policy for that in bankruptcy, and it's a good one, is that debtors are not permitted to use bankruptcy as both a shield and a sword. They cannot say. But I thought that in the other cases, there was a different litigation that was instigated. This was not a different litigation. It was the same litigation. This first case. The first case. Am I right about the fact that the, that the return to the fray cases, you, they started a different litigation, different lawsuit. Well, they're both, I mean, they both arise from the same facts. Can you cite to a, can you cite to a return to the fray case where it was the exact same case that was ongoing? I don't think you can, but I mean. Off the top of my head. That's a tough question. Well, I think it's hard because I don't think they exist. It's, this case seems to be a lot like our decision in Castellino Villas. How do you distinguish that where it was the same case? I think that it's very distinguishable, your honor. This case appears to be much more like Ibarra to me in Castellino and some of the other cases that Ms. Adams relies on, such as Baroni there was an agreement that litigation would go forward and that was part of the plan and it was integral into what claims the creditor would have against the bankruptcy estate. So therefore there was absolutely contemplation by both of the parties that those litigations are going to go forward. Here, it was solely in the debtor's discretion. There was no agreement with the creditor and that's what makes this situation much more like Ibarra and Siegel. Moving to the claim preclusion argument, it is right, you agree that, well, actually first before we get there on the return to the fray, is there really a dispute that you foresaw this litigation ongoing? I mean, there was no assumption on the homeowner's association's part that she was going to drop the case. There wasn't like a new claim that came up or anything like that. I mean, you knew that the case was going to proceed even after she declared bankruptcy. Well, I have no firsthand knowledge one way or the other, I must admit. But at that juncture, the litigation, the first lawsuit that Ms. Adams initiated against Newport Homeowners Association, it had been dismissed. That dismissal was on appeal. But okay, that was on appeal. Had the second claim, it had been filed though, right? Also the second case? The second case had been filed before bankruptcy had been filed. That is correct. It was filed shortly. And there was no assumption that that wasn't going to go away or magically disappear or? Well, that's not necessarily true because the state court held that case in abeyance pending resolution of the first appeal. Well, yeah. I mean, but then the case was clearly ongoing. Well, after that appeal was resolved, Ms. Adams did continue to prosecute it. Moving on to the claim preclusion argument, you agree that the discharge is a statutorily non-waivable claim, right? I agree that with regard to judgments, it is non-waivable, but there are certain circumstances, for example, a reaffirmation agreement. A reaffirmation agreement can certainly waive the discharge and reinstate a debt. And I believe the code section, I don't have it before me, but I believe it says things like judgments and orders are non-waivable, but other things are. Do you think that here, the fact that she could have raised it in the state court proceeding and didn't operate it as a waiver, or do you think that claim preclusion is treated as a separate theory than waiver? I just, I want to flesh out what your argument is on the claim preclusion. I think it's claim preclusion. You don't think it's waived. So you don't think that by the district court, or the, excuse me, the bankruptcy court saying that because she hadn't brought it, she was precluded from bringing it, that issue in bankruptcy. You don't think that that was tantamount to waiver?  Identical, I would say. But I think that the basis on which the court ruled was that a party is required to assert all claims that can be brought. And if they fail to do so, it's issue preclusion. Okay. And just finally, the jurisdictional question. It seems to me, and just correct me if I'm wrong, that comes down to, you have an award, you currently have an award for $142,000 in attorney's fees. Is that right? I think it's less than that. Oh, okay. I make up numbers. I don't know, but you have an award for some attorney's fees. And as I understand this question, the only question right now is the state court has now, the second case has said, we're going to wait until this all gets worked out through bankruptcy to determine whether there's a set off here or not. Is that correct? I honestly don't know the answer to that question, so I won't represent otherwise. I'm just trying to figure out why the bankruptcy, what you're asking for here. It seemed like you were asking for the bankruptcy court to decide how these two cases fit together and whether there could be a set off based on the existing attorney's fees. Well, that's exactly correct. At least under, at the very least, we thought under supplemental jurisdiction, all the factors for the court to make that determination were there. It would adjust if one party is owed one thing and the other party is owed another thing, setting the two off against each other. I guess my question is, why shouldn't that just go back to the state court? The state court has issued a stay to allow this to be determined by the federal courts. Why isn't the state court in the best position to apply California law or whatever the case may be on how these set offs could apply? Well, I think the underlying question is the solely bankruptcy question must be answered as a predicate to be for- Well, I agree with that. But once we answer that, it seems like you're asking us to go further. That seems to be where the BAP said, no, we don't have jurisdiction to do that. I'll be honest, it seems correct what the BAP said there. I'm looking for what your rationale is for why we should step in and do something more than just decide the first two questions. Well, I will address simply the supplemental jurisdictional question. And I think the arising in and arising under, I'll have to leave to my brief. But for a court to exercise supplemental jurisdiction, one consideration is simply judicial economy. I mean, this case has been going on in one court or another for 13 years. If the bankruptcy court can make a determination and get it over with, that would seem to be in the interests of the federal and state judicial systems and the parties. It's also more convenient and fair. There are a number of bases why a court can decline supplemental jurisdiction, but none of those apply as were discussed in the papers. And lastly, there is, again, the underlying issue of was the amount owed to Newport discharged? So it's all part of the same common nucleus of operative facts, which is the final factor. Okay, are there any further questions? There appear to be any. Thank you. Thank you. Permit Ms. Adams to have a rebuttal. Okay, so I have several scattered kind of issues that I wanted to address. In answer, Judge Nelson, your question about why the state court has stayed the pending post-trial motions, it's because it's waiting for the determination on discharge, not on setoff. But in the motion that was filed by Newport Crest at the state court level, they mentioned setoff. And then they came in their adversary proceeding and made a big issue here, but it wasn't really... The issue of setoff did not become part of the court's... Well, under that theory, then we may need to reach it because the state court isn't in a position. I'm sorry, what? Based on what you're explaining, I'm concerned that that suggests we should reach it because the state... It's not pending before the state court. I'd understood that this was... That's one of the reasons why the state court had stayed. The proceeding was to figure out what is the whole world of who owes who what, and then we'll figure it. Well, so if I could clarify a little more. There's one motion that they filed in state, that Newport Crest filed in state court to say, I need to stay. We need to stay. We're going over to federal court to challenge the discharge and we do deserve a setoff. The issue was raised in state court. They just didn't start addressing it yet, just like they didn't address any of the other post-trial things. It is... I don't know if we can say it's an issue, but it was raised by Newport Crest and it's challenged. That's what they're depending on back in state court. Moving on to the... Your Honor had asked me about... Stop all that they use to preclude my counterclaim for the breach of the discharge injunction. Newport Crest cited to two cases, none of which were precedential. Moon and Scott were the two cases. And those cases, I differentiated the nature of those cases as to why they're not applicable at all. Newport Crest failed to come up with any case law that supports his position that because I didn't raise it, I forever raised the right to claim the discharge. And what that does, and I think... I don't know whether I mentioned this in the brief or not, but what it does is it kind of invites creditors to say, okay, we're going to file a motion for fees against the debtor and we're not going to mention it. And if the debtor doesn't know to mention it, then they forever waived it. That doesn't seem to be consistent with the policies underlying the statutes that we're dealing with here. Okay, and on to the next one. The settlement action and the enforcement action, which was the breaches, they were both filed prior to bankruptcy. There's no doubt about that. And opposing counsel said that Newport Crest had not received a notice to creditors about the discharge. And that is a complete misrepresentation. There were several 341 meetings. All of the creditors were notified about these 341 meetings. I've got a list of all of those in the excerpts of record. It wasn't snuck by them. They were well aware of it and they didn't attend any of the 341 hearings. I'm sorry, I have to read my notes here. And then my understanding is, yeah, to answer the other question that you were posing, opposing counsel, did they know that the enforcement action, which involved the breaches, did they know it was continuing? They absolutely knew it was continuing. And they never once in state court say, hey, she's not allowed to go forward because it should have been included in bankruptcy. That was never raised there. And according to all of the record that I reviewed, and I couldn't find anything that gave me a different impression, the trustee abandoned the enforcement action to me. And so that under no circumstances should be or could be considered a return to the fray because it was abandoned to me. And so I identified three acts that they accused me of as constituting the return to the fray. One, filing the late reply brief right after the petition was filed. Two, opposing their fees motion that they filed after I got the discharge. And the three was all of my activity in the enforcement action. They're calling all of that the return to the fray. And the record indicates that the trustee abandoned that case to me. And one of the most important points, OK, wait, I'll end with that. Castellino, you asked opposing counsel about whether that actually applied and it did. Now, I know that their opposing briefing says, well, it's a chapter 11 or chapter 13 case. But when you look at the reasoning behind it, and two other chapter 7 cases have applied, Castellino reasoning and the expansion and what do they call it, the harmonization of the fair contemplation test. And Barone, they come back and they say, you've got, the creditor has to show how they didn't reasonably contemplate this continuing activity in the case. I think we understand your point. OK, yeah. And then, OK, I did that. OK, so the final point that I would like to make is that if the fees were in fact discharged, as everything indicated to me that they were, if they were, then that award that was issued on top of the motions that we went through because they filed, or the hearing that we went through because they filed it, that is void according to case law. The award to me is void if those fees were discharged. And I think I've made all my points. And thank you very much. Thank you. Thank you. Thank you, Ms. Adams, and thank you, counsel. The case just argued is submitted for decision.
judges: Schroeder, Berzon, Nelson